Forte, J.
This action, entered in the Superior Court Department and remanded to the Cambridge District Court pursuant to G.Lc. 231, §102C, is against a licensed oral surgeon by his patient who alleges negligence and lack of informed consent The plaintiff claims that the defendant did not inform him either of the possible risk of altered sensation attending a surgical procedure, or that salivary glands would be removed and as a result there was no informed consent to the procedure. Judgment entered for the plaintiff.
The trial judge found that the defendant was negligent in not giving the plaintiff information about the risk of altered sensation in the lip, and not informing the plaintiff until during the procedure that salivary glands were being removed.
At the trial, the plaintiff, an engineer, presented evidence that a doctor-patient relationship existed between him and the plaintiff (the patient having been referred to the defendant by Dr. Prott), that upon the defendant’s examination, a small lump (a hard fibrotic mass) was found below the surface of the vestibular mucosa of the plaintiff s lower lip as well as two canker-like sores; that the defendant explained the mass was a mucocele and available treatment was surgical removal to insure non-recurrence; that it was a simple operation that would take about five minutes at another appointment The plaintiff further testified that the defendant did not inform him that there was a risk of altered sensation.
At the next appointment, the plaintiff reported the lump was going down, but the doctor proceeded with the procedure; that during the procedure, as he was cutting, the defendant stated he would make a “football shape incision around the mucocele ... and then pull it out so that there will be a little tissue as well as the mucocele” and that “what I’m doing here is cutting out the salivary glands. The look like a little bunch of grapes.”
At the first post-procedure visit, the plaintiff had a black and blue bruise on his lip, some swelling, and some pain which the plaintiff realized was from the stitches. One week later, the plaintiff returned for his second post-operative visit and stated that he was quite unhappy, that he “didn’t want that other tissue removed. I only wanted the mucocele” and that “this exceeded the bounds and that invaded his body.”
The plaintiff further testified that, prior to the procedure, he had no abnormal feelings in his lip, but since approximately two to three weeks after the operation, he had experienced the following conditions in his mouth: the area of his lip where the incision was made “feels like a fat lip,” and there “is a heightened sensitivity but there is also... a loss to some things.” In this regard, the plaintiff explained “quite often very hot food or very cold food like ice cream will actually make it a little painful.” The lip did not interfere with speaking, eating or his ability to do his job, but, he didn’t “like kissing very much any more... because of this, it tends to make him pull back.” The plaintiff admitted that at neither of the two post-operative visits did he complain of any *82 altered sensations, nor had he sought any medical treatment although he mentioned it to his general physician one and a half years later.
As part of the plaintiffs case, the defendant testified that he did inform the patient of the risk of altered sensation and then opined that “the risk [of altered sensation] is so remote that... it’s probably hardly worth discussing with a patient"; that removing the salivary glands is necessary because leaving them in place would more often than not result in recurrence of the mucocele; and that good medical practice dictated removal of both the mucocele and the accessory salivary glands.
In addition, theplaintiffintroducedareport fromWilliamF. Lane, D.M.D., one from John Richardson, D.M.D., and a pathology report. The pathology report indicated “old mucocele with underlying salivary glands — source labial mucosa.”
Dr. Lane’s report made after an examination of the plaintiff states:
There was no clinical evidence of a neurological deficit. The plaintiffs complaints are consistent with a diagnosis of parathesia in the incision site.
This diagnosis is based strictly on the history as given by the patient as there is no demonstrable clinical neurological deficit The patient’s alleged damages appear to be non-existent.
Dr. Richardson’s report states:
1. Removal of glandular tissues deep to the mucocele is advised to eliminate the source of the retained secretion (underlining in original).
2. In removing these glands, Dr. Caldwell showed good clinical judgment and decreased the possibility of the patient having to undergo another surgical procedure.
The plaintiff then rested, whereupon the defendant presented his Dist./Mun. Cts. R. Civ. P., Rule 41(b) motion testing the sufficiency of the evidence. The motion was denied.
At the close of the evidence, the defendant presented requests for rulings, among which were the following:
2. The physician is not required to inform the patient of remote risks.
3. In a medical malpractice action based solely on the lack of informed consent, the plaintiff must prove that had proper information been provided neither he nor a reasonable person in similar circumstances would have undergone the procedure.
4. Aphysician owes his patient the duty to disclose in areasonable manner all significant medical information that the physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure. The information a physician reasonably should possess is that information possessed by the average qualified physician or, in the case of a specialty, by the average qualified physician practicing that specialty.
The trial judge allowed request number 4 and allowed request number 3 with the notation “see ruling number 2.” As to request number 2, the court ruled as follows:
Allowed as applied to the usual case. However, the court finds that the surgical removal of the mucocele was briefly discussed at the first visit on June 5,1985. When the plaintiff appeared for a second appointment on June 12,1985, the size of the mucocele had decreased, the plaintiff asked, ‘Do we really have to do this?’ The defendant, a dental surgeon, explained that the mucocele would not go away on its own. I find that the plaintiff demonstrated unusual concern during this visit and a much more detailed explanation of the risk was required. Instead of providing more information, the defendant stuck the needle into his lip and proceeded with the surgery in a summary manner. Since there was no information given during either visit about the slight risk of altered sensation in the lip, which risk the defendant testified was always possible, the court rules on the particular facts of this case that there was no informed consent. Although the risk was slight, it was certainly *83 material, since such an altered sensation would be expected to be permanent. Indeed, the defendant claims to have discussed this particular risk on both visits. However, I find that he did not The law applicable to these facts is set out in the Hamish case. ‘Every competent adult has a right to forego treatment, or even cure, if it entails what for him are intolerable consequences or risks however unwise his sense of values may be in the eyes of the medical profession.’ I find that this plaintiffwas not given in areasonable manner sufficient information to make an informed judgment to give or withhold consent to the surgical procedure which failure constitutes professional misconduct. G.Lc.231,§60B. Furthermore, I find that plaintiff would not have consented to the surgery had he been informed of the risk of altered sensation, (underlining in original).
The defendant claims to be aggrieved by the denial of his request for a directed finding pursuant to Rule 41 and the court’s application of the law as set forth in requests number 2,3 and 4, above.
There was no error.
In ruling on a motion pursuant to Dist/Mun. Cts. R. Civ. P., Rule 41(b)(2), “the standard is “whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn infavor of the plaintiff” (citation omitted). Forlano v. Hughes, 393 Mass. 502, 504 (1984).
A health provider’s “failure to divulge in a reasonable manner to a competent adult patient sufficient information to enable the patient to make an informed judgment whether to give or withhold consent to a medical or surgical procedure constitutes a professional misconduct and comes within the ambit of G.Lc. 231, §60B.” Harnish v. Children’s Hospital Medical Center, 387 Mass. 152, 154-155 (1982).
“A physician owes to his patient the duty to disclose in a reasonable manner all significant medical information that a physician possesses or reasonably should possess that is material to an intelligent decision by the patient whether to undergo a proposed procedure.” Id. at p. 155.
The obligation to give adequate information does not require the disclosure of all risks of a proposed therapy or of information the physician reasonably believes the patient already has, such as the risks like infection, inherent in any operation. Id. at 156,citing Wilkenson v. Vercy, 110 R.I. 606, 627 (1972) and Canterbury v. Spence, 464 F.2d 772 at 788, cert. denied, 409 U.S. 1064 (1972).
In defining the first of the two-tiered requirement enunciated in the Harnish case,[1] Halley v. Birbiglia, 390 Mass. 540 at 548 (1983), specified four elements:
1. a sufficiently close doctor-patient relationship must exist;
2. the information subject to disclosure must be that which the doctor knows or reasonably should know;
3. the information must be of such a nature that the doctor should reasonably recognize that it is material to the patient;
4. the doctor must fail to disclose the subject information to the patient
The plaintiff offered evidence of the doctor-patient relationship, that the defendant knew of the risk, and that the defendant did not inform him of the risk nor inform him prior to the procedure that salivary glands would be removed.
As to the materiality determination issue, it “is one that lay persons are qualified to make without the aid of an expert.” Harnish, supra at p. 156.
Therefore, the Rule 41(b) (2) motion was correctly denied.
From the trial judge’s finding in response to request for ruling number 2, it is clear the court did not misapply the correct principles of law as requested by the defendant in request numbers 2,3 and 4.
Report dismissed.

 The second tier is that the breach must be causally related to the injury. The appellant neither briefed nor argued this issue, and therefore we have not addressed it